OPINION OF THE COURT
Jasen, J.
On this appeal, plaintiffs challenge the State constitutional and statutory requirements that certain Judges of the State retire at age 70. The challenge is based upon both the equal protection and due process clauses to the Fourteenth Amendment of the United States Constitution.[1]
Plaintiffs Maresca, Rosen, Ramos-Lopez and Wollin are Judges of the Civil Court of the City of New York who have reached the age of 70 in 1984, and pursuant to article VI (§ 25, subd b) of the New York State Constitution[2] and section 23 of *248 the Judiciary Law,[3] are compelled to retire on December 31, 1984. Plaintiff Brennan is a Justice of the Supreme Court who will reach age 70 in 1988, and would be compelled to retire on December 31, 1988.
In their complaint, plaintiffs sought judgment: (a) declaring article VI (§ 25, subd b) of the New York State Constitution and section 23 of the Judiciary Law unconstitutional under the Fourteenth Amendment to the United States Constitution; and (b) enjoining, during the pendency of the action and permanently, defendants Governor Cuomo, Comptroller Regan, New York State Employees’ Retirement System, and the Office of Court Administration, from causing the involuntary retirement by reason of age of any of the plaintiffs or any member of the class. At Special Term, plaintiffs moved for a preliminary injunction and defendants cross-moved pursuant to CPLR 3211 (subd [a], par 7) to dismiss the complaint. Additionally, at Special Term and on appeal before this court, defendants have maintained that the complaint should be dismissed under the doctrine of laches since plaintiffs should have sought relief prior to the election of Judges to fill their vacancies. Inasmuch as vze reach the merits of the case with respect to plaintiff Brennan, as against whom no laches claim can be made, and agree with the determination below, we need not resolve the substantial issue of laches.
By order and judgment entered December 20, 1984, Special Term, New York County, granted plaintiffs’ motion for a preliminary injunction, denied the cross motion to dismiss, enjoined the defendants from compelling the retirement of plaintiffs prior *249 to the expiration of their judicial terms of office, directed plaintiffs to continue their work as Judges and ordered the Office of Court of Administration to continue them in their respective titles on its payroll. Special Term specifically held both article VI (§ 25, subd b) of the State Constitution and section 23 of the Judiciary Law violative of the due process and equal protection clauses of the Fourteenth Amendment of the United States Constitution.
Defendants, including the Office of Court Administration, immediately took an appeal to the Appellate Division, First Department. The Appellate Division, in a Per Curiam opinion, unanimously reversed the order of Special Term, on the law, denied the motion for a preliminary injunction and granted defendants’ cross motion to dismiss the complaint. Plaintiffs have pursued an expedited appeal to this court. The action, insofar as it sought a declaratory judgment, should not have been dismissed by the Appellate Division, upon its holding that the provisions in question were constitutional. A declaration to that effect should have been made (Lanza v Wagner, 11 NY2d 317, 334). Accordingly, the order of the Appellate Division should be modified by declaring article VI (§ 25, subd b) of the New York Constitution and section 23 of the Judiciary Law constitutional under the Fourteenth Amendment of the United States Constitution and, as so modified, the order of the Appellate Division should be affirmed.
This court is fully cognizant of the arguments that can be made against the wisdom of the challenged provisions; however, for the repeal of such provisions, appeal lies to the ballot and to the legislative processes of democratic government, not to the courts (Noble State Bank v Haskell, 219 US 575, 580 [Holmes, J.]; United States v Butler, 297 US 1, 79 [Stone, J., dissenting]). This constitutes the very core of the democratic process which, under law, proscribes only unconstitutional action (Abraham, The Judicial Process [4th ed], Oxford 1980, pp 396-397; see, also, Cardozo, The Nature of the Judicial Process, Yale University 1921, p 141; Lochner v United States, 198 US 45, 74 [Holmes, J., dissenting]). Hence, we observe at the threshold that as a court of law, our only concern is with plaintiffs’ claims that the mandatory retirement provisions do violence to the equal protection and due process clauses of the Fourteenth Amendment of the Federal Constitution.
On appeal to this court, plaintiffs contend that the mandatory retirement restrictions are violative of the Fourteenth Amendment to the United States Constitution on the grounds that the *250 provisions discriminate between Judges under age 70 and those over age 70, and discriminate against plaintiffs by permitting Justices of the Supreme Court and Judges of the Court of Appeals to receive certification for service, as Justices of the Supreme Court, until the age of 76, in contrast to those membe¡rs of the judiciary who serve upon the Civil Court, Criminal Court, Family Court, County Court, Surrogate’s Court and Court of Claims, none of whom may be so certified. Also, plaintiffs seek to invalidate the mandatory retirement provisions under the due process clause of the Fourteenth Amendment.
Turning to plaintiffs’ first equal protection argument, it is clear that the Judges who have attained the age of 70 do not constitute a suspect class for purposes of equal protection analysis. (See Vance v Bradley, 440 US 93, 96-97; Massachusetts Bd. of Retirement v Murgia, 427 US 307, 313.) Nor do the constitutional and statutory age restrictions impermissibly interfere with the exercise of a fundamental right. (See Vance v Bradley, 440 US 93, supra; Massachusetts Bd. of Retirement v Murgia, supra.) Thus, the challenged provisions are not to be subjected to strict judicial scrutiny, but, rather, to a rational basis standard of review. Pursuant to traditional rational basis analysis, a legislative enactment will pass constitutional muster if the governmental classification is based upon some conceivable and legitimate State interest (People v Drayton, 39 NY2d 580). If any conceivable state of facts will support the classification, said provisions will not be held violative of the equal protection clause (Matter of Catapano Co. v New York City Fin. Admin., 40 NY2d 1074, 1075, app dsmd 431 US 910, citing Carmichael v Southern Coal Co., 301 US 495, 509). As this court said in Wiggins v Town of Somers (4 NY2d 215, 218-219), “The principles which are applicable to this case are familiar indeed. Legislative enactments are presumed to be constitutional, i.e., they are presumed to be supported by facts known to the Legislature * * * While this presumption is rebuttable, unconstitutionality must be demonstrated beyond a reasonable doubt * * * Particularly apropos is the rule that the law may not be arbitrary and it must be reasonably related to some manifest evil * * * which, however, need only be reasonably apprehended * * * And we must be guided by the familiar principle that ‘it is only as a last resort’ that courts strike down legislative enactments on the ground of unconstitutionality.” (Citations omitted.) A fortiori that reasoning applies where, as here, the validity of a State constitutional provision, rather than a mere ordinance or statute, is adjudged under the Federal Constitution.
*251 The legitimate purpose justifying the provision need not be the primary purpose of the provisions (McGinnis v Royster, 410 US 263, 276)[4] and indeed, a court may even hypothesize the motivations of the State Legislature to discern any conceivable legitimate objective promoted by the provision under attack (Weinberger v Salfi, 422 US 749, 780). The mandatory retirement age limitation for State Judges is rationally related to the promotion of any or all of the following State interests: (1) advancement of general considerations of judicial efficiency (Rubino v Ghezzi, 512 F2d 431, 433, cert den 423 US 891); (2) motivation and encouragement of qualified, younger attorneys with judicial aspirations, by this orderly process of attrition (Rubino v Ghezzi, supra; Vance v Bradley, 440 US 93, 100, supra); (3) elimination of the unpleasantness and embarrassment of selectively removing aged and disabled Judges (Malmed v Thornburgh, 621 F2d 565, 572, cert den 449 US 955); (4) prevention of harm by a few disabled Judges which more than offsets loss of Judges who retain full powers past age 70 (Malmed v Thornburgh, supra); (5) elimination of the administrative burden of testing each Judge attaining the age of 70 to assess competency; (6) avoidance of the economic burden of testing and removing incapable Judges; and (7) the fixing of a line at a certain age which attempts to uphold the high competency for judicial posts and which fulfills a societal demand for the highest caliber Judges in the system (O’Neil v Baine, 568 SW2d 761 [Mo]). The challenged provisions mandating retirement at the end of the year in which age 70 is reached manifestly have a rational basis.
The second branch of plaintiffs’ equal protection challenge seeks to invalidate the mandatory retirement provisions upon the ground that an associated provision permits Justices of the Supreme Court and Judges of the Court of Appeals to receive certification for further judicial service until the age of 76, in contrast to those members of the judiciary who serve upon the Civil Court, Criminal Court, Family Court, County Court, Surrogate’s Court and Court of Claims, norte of whom may be so certified.[5] Due to the complexity and diversity of the judicial grist of Supreme Court (NY Const, art VI, § 7), certification of Supreme Court Justices and Court of Appeals Judges for service *252 in the Supreme Court is warranted to retain Judges with experience, and to insure an adequate supply of judicial personnel to meet the press of Supreme Court business. With respect to the broad, general jurisdiction conferred upon the Supreme Court, it has been early noted that the court’s jurisdiction includes “all cases of every description in law and equity, from the most important and complicated to the most simple and insignificant” (De Hart v Hatch, 3 Hun 375, 380). Mindful of the State-wide reach of Supreme Court jurisdiction, the absence of maximum monetary limitations upon invocation of Supreme Court jurisdiction, and the conferral of jurisdiction over certain simple or specialized matters upon other courts (see Siegel, NY Prac, § 12), the complexity of Supreme Court matters may rationally be deemed to require greater experience and manpower than are necessary in other courts. Where, as here, significant reasons of fiscal concern and the proper administration of the courts exist, or could conceivably exist, to justify distinctions between judicial offices, the lack of mathematical symmetry within the unified court system shall be disregarded (Matter of Tolub v Evans, 58 NY2d 1, 8, app dsmd 460 US 1076; see Williamson v Lee Opt. Co., 348 US 483, 489).
Plaintiffs’ argument that mandatory retirement provisions violate the due process clause of the Fourteenth Amendment, by creating an irrebuttable presumption that Judges over the age of 70 are physically or mentally incapable, need not long detain us. The instant case presents neither a classification adopted as an administrative device to serve as evidence of another classification (see Bell v Burson, 402 US 535; Vlandis v Kline, 412 US 441; United States Dept. of Agric. v Murry, 413 US 508) nor the application of a procedure implicating the fundamental interests of affected individuals such as custody of children (Stanley v Illinois, 405 US 645) or the freedom of choice in matters of marriage and family life (Cleveland Bd. of Educ. v LaFleur, 414 US 632) — the traditional contexts in which the irrebuttable presumption doctrine has been employed (Malmed v Thornburgh, 621 F2d 565, 574-575, supra). Under circumstances closely analogous to those herein presented, claims that impermissible irrebuttable presumptions were created were summarily rejected (Weisbrod v Lynn, 383 F Supp 933, affd 420 US 940; Rubino v Ghezzi, 512 F2d 431, supra; McIlvaine v Pennsylvania, 454 Pa 129, app dsmd 415 US 986).
Perhaps recognizing that the irrebuttable presumption doctrine may be viewed as a veiled adoption of a rigorous equal *253 protection scrutiny (United States Dept. of Agric. v Murry, 413 US 508,519 [Marshall, J., concurring], supra; Note, The Irrebuttable Presumption Doctrine in the Supreme Court, 87 Harv L Rev 1534, 1556), the United States Court of Appeals for the Second Circuit has limited application of the doctrine to those cases involving suspect classifications or fundamental interests (Johnson v Lefkowitz, 566 F2d 866, 869, cert den 440 US 945, citing Frontiero v Richardson, 411 US 677), of which age is not one (see, e.g., Weiss v Walsh, 324 F Supp 75, affd 461 F2d 846, cert den 409 US 1129). Since the due process doctrine of irrebuttable presumptions is coextensive with the equal protection clause (Trafelet v Thompson, 594 F2d 623, 630; Johnson v Lefkowitz, supra), and our foregoing equal protection analysis demonstrates a rational basis for the age limitation upon judicial tenure, plaintiffs’ due process claim is without merit.
It is not within the province of the judiciary to balance the advisability of a lawfully implemented public policy against the hardship or illogic it may be said to impose. This is especially true in the instant case where the policy at issue, expressed in a constitutional provision, directly manifests the will of the electorate of the State of New York. Inasmuch as the distinctions embodied in the challenged provisions can be justified as shown above, plaintiffs’ constitutional challenge must fail.
Accordingly, the order of the Appellate Division should be modified, with costs to respondents, by declaring both article VI (§ 25, subd b) of the New York State Constitution and section 23 of the Judiciary Law constitutional under the Fourteenth Amendment of the United States Constitution, and by otherwise dismissing the complaint as to the Office of Court Administration, and, as so modified, the order of the Appellate Division should be affirmed.
Judges Jones, Wachtler, Meyer, Simons and Kaye concur; Chief Judge Cooke taking no part.
Order modified, with costs to respondents, in accordance with the opinion herein and, as so modified, affirmed.

. [1] That members of this court may be affected by the outcome of this appeal does not call for recusal. In the circumstances, inasmuch as this court has exclusive jurisdiction under the Constitution to hear this appeal (art VI, § 3, subd b, par [1]) and no other judicial body exists to which this appeal could be referred for disposition, the present members of the court are required to hear and dispose of it under the Rule of Necessity (Matter of Morgenthau v Cooke, 56 NY2d 24, 29, n 3). The Chief Judge has recused himself in conformity with his customary practice when, as here, the Office of Court Administration is a party to an appeal.

. New York State Constitution (art VI, § 25, subd b) provides in pertinent part: “Each judge of the court of appeals, justice of the supreme court, judge of the court of claims, judge of the county court, judge of the surrogate’s court, judge of the family court, judge of a court for the city of New York established pursuant to section fifteen of this article and judge of the district court shall retire on the last day of December in the year in which he reaches the age of seventy.”
Article VI (§ 25, subd b) also provides: “Each such former judge of the court of appeals and justice of the supreme court may thereafter perform the duties of a justice of the supreme court, with power to hear and determine actions and proceedings, provided, however, that it shall be certificated in the manner provided by law that the services of such judge or justice are necessary to *248 expedite the business of the court and that he is mentally and physically able and competent to perform the full duties of such office. Any such certification shall be valid for a term of two years and may be extended as provided by law for additional terms of two years. A retired judge or justice shall serve no longer than until the last day of December in the year in which he reaches the age of seventy-six.”

. Section 23 of the Judiciary Law provides in pertinent part: “No person shall hold the office of judge, justice or surrogate of any court, whether of record or not of record, except a justice of the peace of a town or police justice of a village, longer than until and including the last day of December next after he shall be seventy years of age”.
Sections 114 and 115 of the Judiciary Law (both added by L 1962, ch 704, § 2), provide that Court of Appeals Judges (§ 114) and Supreme Court Justices (§ 115) retired pursuant to article VI (§ 25, subd b) of the State Constitution may be certified by the Administrative Board of the Courts for continued service upon findings that they have the requisite mental and physical capacity and that their services are necessary to expedite the business of th e Supreme Court.

. That the original purpose reflected in the Constitutional Convention may no longer prevail is irrelevant so long as there remains a rational basis.

. This argument cannot, of course, be raised by plaintiff Brennan who, as a Justice of Supreme Court, is permitted to apply for certification upon attaining age 70.